**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DSM NUTRITIONAL PRODUCTS, LLC**

                                        **Plaintiff,**

        **v.**                                              **1:20-CV-476**
                                                         **(TJM/DJS)**
**PROVITAS, LLC,**

                                        **Defendant.**
_____

**PROVITAS, LLC**

                                        **Third-Party Plaintiff,**

                                                         **1:20-CV-476**
                                                         **(TJM/DJS)**
        **v.**


**QUALITY INGREDIENTS CORPORATION,**

                                        **Third-Party Defendant.**

_____

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

**DECISION & ORDER**

        Before the Court is Third-Party Defendant Quality Ingredients Corporation's ("QIC")

motion to dismiss the Amended Third-Party Complaint of Defendant/Third-Party Plaintiff

Provitas, LLC ("Provitas").  <u>See</u> dkt. # 22.  In responding to the motion, Provitas moves to

dismiss the case or transfer the litigation to the United States District Court for the District

of Minnesota if the Court finds that the Court cannot extend personal jurisdiction over QIC.

1

See dkt. # 35.  The parties have briefed the issues and the Court will decide the matter without oral argument.

## I.    BACKGROUND

This case arises from an agreement between Plaintiff DSM Nutritional Products, LLC ("DSM") and Provitas for Provitas to provide DSM with Vitamin D2 to be used in DSM's vegan products.  See Complaint, dkt. # 1.  DSM provided a purchase order to Provitas for 500 kilograms of D2 on March 10, 2017.  Id. at ¶ 9.  The purchase order stipulated that the D2 would be delivered to DSM's facility located at 2105 Technology Drive in Schenectady, New York.  Id. at ¶ 11.  DSM specified to Provitas that the product DSM ordered would be "free of animal-derived ingredients or contaminants."  Id. at ¶ 12. DSM intended to use the D2 in a vegan product.  Id.  Vitamin D2 is not derived from animals and can be "used in vegan products."  Id. at ¶ 13.  Vitamin D3 can come from animal sources "and is generally unacceptable for vegan-labeled products."  Id.

Provided delivered 500 KG of D2 as specified in the order on May 25, 2017 to DSM's Schenectady, New York, facility.  Id. at ¶ 14.  Expecting that the D2 did not contain any animal-derived products, DSM incorporated that product in DSM's "manufacturing process, which essentially requires the D2 to be mixed with other ingredients."  Id. at ¶ 15.

In August 2017, however, Provitas notified DSM that the D2 the Defendant had provided had been "contaminated by certain quantities of animal-derived D3."  Id. at ¶ 16. The contaminated D2 had already been added to Plaintiff's product, which made that product "unusable for its intended purpose."  Id. at ¶ 17.  After the contamination, Provitas claimed to have undertaken an investigation to resolve the dispute.  Id. at ¶ 18.  Despite this promise, Plaintiff claims, Defendant "continues to refuse to compensate DSM for the

2

damages" that resulted from Provitas' alleged breach of contract.  Id. at ¶ 19.  That contamination of DSM's product, the Complaint alleges, has caused $1.8 million in damages.  Id. at ¶ 20.  Provitas has refused to compensate Plaintiff for that damage.  Id. at ¶ 24.  The Complaint contains counts for breach of contract and breach of express warranty and seeks damages in the value of the unusable product.

On May 15, 2020, after being served with the Complaint, Provitas filed a third-party complaint that named QIC as Defendant.  See dkt. # 10.  QIC filed a motion to dismiss that third-party complaint.  See dkt. # 18.[1]  Provitas responded by filing an Amended Third-Party Complaint.  See dkt. # 20.  QIC moved to dismiss that Amended Third-Party Complaint.  See dkt. # 22.  That motion is currently before the Court.

The Amended Third-Party Complaint acknowledges that DSM claims damages when "106,000 kg of its vegan soy milk product was damaged and rendered unusable as vegan."  Dkt. # 21 at ¶ 1.  The damage came as a result of contaminated powdered Vitamin D2 mixed into the soy milk.  Id.  Provitas alleges that, after contracting to deliver the D2 to DSM, Provitas "placed an order with QIC to manufacture the dry Vitamin D2 that was ordered by DSM."  Id. at ¶¶ 13-14.  QIC, Provitas contends, "was in the business of manufacturing dry powder products from liquid sources by means of a spray drying process[.]"  Id. at ¶ 15.  QIC produced the dry Vitamin D2 used to fill DSM's order.  Id.

Provitas further alleges that QIC manufactured the D2, packaged it "in plastic lined cardboard boxes, labeled the boxes, and shipped them" on May 18, 2017.  Id. at ¶ 16.  DSM alleges, Provitas claims, that DSM only discovered the contaminated D2 after mixing

---

[1]That motion is now moot, as it applies to a Third-Party Complaint that has been amended.

the QIC-manufactured powder into the soy milk product DSM intended to sell.  Id. at ¶ 17.
While Provitas denies any liability and alleges that DSM's own conduct caused the
contamination, Provitas further alleges that "any damages which have been or will be
incurred by Provitas" from the contaminated soy milk "were caused by QIC's" conduct in
preparing the D2 that Provitas distributed.  Id. at ¶ 19.  Provitas contends that no Provitas
employs were present during the production, packaging, or labeling of the product shipped
to DSM.  Id. at ¶¶ 20-22.  No Provitas employees opened any of the packages after QIC
sealed them.  Id. at ¶ 23.  Provitas alleges that Provitas reasonably relied on QIC to
produce D2 that did not become contaminated with animal products.  Id. at ¶ 30.  Any
damages DSM suffered from the contaminated D2, Provitas insists, "were caused in whole
or in part by" QIC's conduct.  Id.  The Third-Party Complaint raises a variety of claims
against QIC, including negligence, breach of contract, breach of express and implied
warranties, and for indemnification and contribution.

QIC responded to the Amended Third-Party Complaint with another motion to
dismiss.  The parties then briefed the issues, and the matter is ripe for disposition.

## II.   LEGAL STANDARD

Third-Party Defendant QIC has filed a motion to dismiss the Amended Third-Party
Complaint on several bases, discussed as relevant here.

### A.   First-Filed Rule

First, QIC argues that the action here is not appropriate because Provitas has
already filed an action on the same basis in the District Court of Minnesota. The "first-filed
rule" prevents that action in this Court, QIC claims.  "As a general rule, '[w]here there are
two competing lawsuits, the first suit should have priority.'"  Emplrs. Ins. v. Fox Entm't

Group, Inc., 522 F.3d 271, 274-75 (2d Cir. 2008) (quoting First City Nat'l Bank & Trust Co.

v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)).  This rule promotes the efficient use of

judicial resources by "avoiding duplicative litigation and honoring the plaintiff's choice of

forum."  Id.  Two exceptions to that rule exist: "(1) where the 'balance of convenience'

favors the second filed action, and (2) where 'special circumstances' warrant giving priority

to the second suit."  Id. (internal citations omitted).  Courts use the same factors to

determine the balance of convenience as they do in deciding motions to transfer venue.

Id. at 275.  "Special circumstances include manipulative or deceptive behavior on the part

of the first-filing plaintiff."  New York Marine & Gen. Ins. Co. v. Lafarge N. Am., 599 F.3d

102, 112 (2d Cir. 2010).

> **B.    Personal Jurisdiction**

QIC also contends that the Court lacks personal jurisdiction over QIC.  Federal Rule

of Civil Procedure 12(b)(2) permits a defendant to move to dismiss the case for "lack of

personal jurisdiction."  FED. R. CIV. P. 12(b)(2).   "The plaintiff bears the burden of

establishing that the court has jurisdiction over the defendant when served with a Rule

12(b)(2) motion to dismiss."  Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d

Cir. 2001).  When a party moves to dismiss a complaint for lack of personal jurisdiction and

the matter "is addressed on affidavits, all allegations are construed in the light most

favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a

controverting presentation by the moving party."  A.I. Trade Fin. v. Petra Bank, 989 F.2d

76, 79-80 (2d Cir. 1993). Though the Plaintiff has the burden of establishing jurisdiction,

"where no evidentiary hearing has been held, the plaintiff need make only a prima facie

showing of jurisdiction."  Windfield v. C & C Trucking, 56 Fed. R. Serv. 3d at *5 (S.D.N.Y.

2003).   Still, "'[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'"  APWU v. Potter, 343 F.3d 618, 627 (2d Cir. 2003) (quoting LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999)).  The court "'retains considerable latitude devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'"  Id. (quoting Phoenix Consulting, Inc. v. Republic of Angola, 342 U.S. App. D.C. 145, 216 F.3d 36, 40 (D.C. Cir. 2000)).

## III.   ANALYSIS

The Court will address each ground the Third-Party Defendant raises in turn, as appropriate.[2]

### A.   First-Filed Rule

QIC first argues that the Court should dismiss the Amended Third-Party Complaint or transfer the matter to the District of Minnesota, where Provitas filed an action against QIC for the conduct covered by Provitas' third-party action here.  QIC points out that Provitas argued in another action, filed by DSM in New Jersey, that the case should be venued in Minnesota.  When DSM filed the action in this Court, these other related actions were already pending.  Provitas responds by providing evidence that DSM voluntarily dismissed the action in New Jersey and Provitas voluntarily dismissed the action in Minnesota.  See Affidavit of William H. Baaki, dkt. # 35-1, at ¶¶ 14, 19 and the documents

_____

[2]Since the Court's decision here dismisses the Amended Third-Party Complaint against QIC, the Court will not address QIC's arguments that the case should be either dismissed or transferred and consolidated with the case in the District of Minnesota due to venue issues.  First, there is no action remaining in the District of Minnesota with which this case could be consolidated.  Second, QIC has no interest in the forum for this litigation after being dismissed from the case.

cited therein.

Whether the first-filed rule applies in this circumstances or not, there are currently no other actions pending in other federal courts concerning the events giving rise to this case. Under those circumstances, there are not two competing actions that implicate the first-filed rule. The Court will deny the motion on that basis.

### B.   Personal Jurisdiction

In a diversity action, "'the amenability of a foreign corporation to suit in federal court . . . . is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee.'" Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (quoting Arrowsmith v. United Press Int'l, 320 f.2d 219, 233 (2d Cir. 1963)). This standard requires a "two party inquiry." Id. "First," the court "must determine whether the plaintiff has shown the defendant is amendable to service of process under the forum state's laws[.]" Id. Next, the court "must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Id.

QIC claims that the Court may not assert personal jurisdiction over the company. QIC argues that the Court lacks either specific or general jurisdiction over QIC, and that the case against QIC must therefore be dismissed. Provitas responds to the motion by producing evidence that might be used to address whether New York law permits the court's exercise of jurisdiction over QIC, but offers no argument or citations to case law to support that claim. Provitas's briefing addresses only whether permitting service on QIC would comport with due process.

7

New York is the forum state, and the Court must first address whether New York law permits an exercise of jurisdiction over QIC.   New York law provides two ways for a court to assert jurisdiction over a party: general or specific jurisdiction.  As to general jurisdiction, New York CPLR § 301 "provides for general jurisdiction over defendant corporations that are 'doing business' in New York."  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc., 937 F.2d 44, 50-51 (2d Cir. 1991).  To be subject to jurisdiction on this basis, the corporation must have "engaged in a such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in the jurisdiction is warranted."  Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33, 565 N.E.2d 488, 4909 (N.Y. 1990).   "The test for 'doing business' is a 'simple and 'pragmatic one,' which varies in its application depending on the particular facts of each case."  Id.  (quoting Laufer v. Ostrow, 55 N.Y.2d 305, 309-310 (1982).  A corporation must "[do] business" in the state "'not occasionally or causally, but with a fair measure of permanence and continuity so as to warrant a finding of its presence in this jurisdiction.'"  Okeke v. Momah, 132 A.D.3d 648, 649, 17 N.Y.S.3d 746, 748 (2d Dept. 2015) (quoting Sedig v. Okemo Mtn., 204 A.D.2d 709, 710, 612 N.Y.S.2d 643 (1994)).  "Mere solicitation of business within New York will not subject a defendant to New York's jurisdiction."  Mejia-Haffner v. Killington, Ltd., 119 A.D.3d 912, 913, 990 N.Y.S.2d 561, 563 (2d Dept. 2014).

QIC provides the affidavit of Isabelle Day, the company's Chief Executive Officer and President.  See Affidavit fo Isabelle Day ("Day Affidavit"), dkt. # 18-6, at ¶ 1.  Day relates that QIC operates by "tak[ing] raw ingredients provided by its customers, including but not exclusively food processing companies, [and] mix[ing] them per the customer's specifications into liquid slurries which are then dried into powders."  Id. at ¶ 3.  Day attests

that QIC is incorporated and headquartered in Minnesota.  Id. at ¶¶ 4-5.  QIC does not own any property or operate any offices in New York and has "no physical presence" in the State.  Id. at ¶ 6.  The company has no employees in New York and QIC's employees do not have a "regular or systematic presence" in New York "related to the employment with QIC."  Id. at ¶¶ 7-8.  QIC is not registered in New York and has never sought authorization to transact business in New York.  Id. at ¶ 9.  While QIC has a website available to the public, all orders must be made with a QIC representative.  Id. at ¶ 10.  From 2017-2019, only about .05% of all materials used in QIC's production came from New York.  Id. at ¶ 11.  In 2017, less than .05% of QIC sales and shipments went to customers in New York.  Id. at ¶ 12.  In 2018 and 2019, less than 1% of sales and shipments form QIC went to New York.

Day's affidavit, this portion of which is not disputed by Provitas, indicates that QIC's presence in New York was not of the sort that would subject the company to general jurisdiction in the State.  QIC's presence in the state did not involve any organized operation or physical presence and cannot be said to have existed "with a fair measure of permanence and continuity so as to warrant a finding of its presence in this jurisdiction.'"  Okeke v. Momah, 132 A.D.3d 648, 649, 17 N.Y.S.3d 746, 748 (2d Dept. 2015).  The Court finds that general jurisdiction does not apply.

QIC could still be subject to specific jurisdiction pursuant to New York's "long arm" statute, CPLR § 302(a).  "A defendant who is not 'doing business' in New York within the meaning of section 301 may be sued in New York on a lesser showing of forum contacts if the cause of action arises from those contacts."  Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983).  Section 302(a) provides that "[a]s to a cause of action arising

from any of the acts enumerated in this section," the Court may exercise jurisdiction over a

person or person's agent who:

> 1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2.  commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3.  commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4.  owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

Provitas had not provided any evidence that QIC itself committed a tortious act in

the state or transacted any business in the state that would implicate specific jurisdiction by

giving rise to the cause of action here.[3]   At issue, then, is section 302(a)(3)(ii).   Jurisdiction

under this provision "rests on five elements":

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate commerce.

LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (N.Y. 2000). The fourth element, that

the defendant reasonably expects in-state consequences from actions outside the state "is

met when '[t]he nonresident tortfeasor expect[s] or ha[s] reason to expect, that his or her

tortious activity in another State with have *direct* consequences in New York.'" Id. (quoting

---

[3]In fact, Provitas does not address Section 302 at all in its briefing.

Ingraham v. Carroll, 90 N.Y.2d 592, 598 (N.Y. 1997) (emphasis in original)). Jurisdiction cannot be based on the residence or domicile of an injured party alone, "'jurisdiction . . . must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled here.'" Penguin Group (USA) Inc. v. American Buddha, 16 N.Y.3d 295, 303 (N.Y. 2011) (quoting Fantis Foods v. Standard Improting Co., 49 N.Y2d 317, 326 (N.Y. 2000)). This part of the test works to "'ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere.'" Id. (quoting Ingraham, 90 N.Y.2d at 598). A defendant does not have to "foresee the specific event that produced the alleged injury." Id. "The defendant need only reasonably foresee that any defect in its product would have direct consequences within the State." Id.

Provitas provides an affidavit from Robert M. Weber, President and Managing Member of the company. Affidavit of Robert M. Weber ("Weber Affidavit"), dkt. # 35-8, at ¶ 1. Weber relates that DSM ordered 500 kg of dry Vitamin D2 from Provitas in 2017 "for delivery to DSM's facilities in Schenectady, New York and Ontario, California." Id. at ¶ 2. Provitas then in April 2017 ordered dry Vitamin D2 from QIC, "along with other products including a separate order for Vitamin D3." Id. at ¶ 3. QIC then made the dry Vitamin D2, packaged it "in plastic lined cardboard boxes, labeled the boxes, and shipped the boxes" from the production facility in Minnesota to a warehouse in Prosper, Texas. Id. at ¶ 4. An unnamed party then shipped these boxes from Texas "to DSM's facilities located in Schenectady, New York and Ontario, California." Id. No one opened the boxes prior to shipment to DSM; they "were shipped to DSM exactly as they had been packaged, sealed,

11

and labeled by QIC." Id.

Weber avers that Provitas is a Texas limited liability company with a headquarters and principal place of business in Plano, Texas. Id. at ¶ 7. On December 8, 2016, before placing its order with QIC, Provitas sent QIC DSM's Global Raw Material Supplier Questionnaire spreadsheet. Id. at ¶ 8. John Gohsman, Provitas' outside independent sales representative, sent the material to Heidi Jarmuz, then QIC's Food Safety and Quality Manager. Id. QIC completed part of the questionnaire. Id. Jarmuz sent the partially completed form and other documents via email to Provitas on December 19, 2016. Id. Weber contends that this document demonstrates that "QIC certainly had knowledge that Provitas' customer was DSM prior to manufacturing the Vitamin D2 product at issue." Id. at ¶ 9. Moreover, he claims, "[i]t is well known and common knowledge in the industry that DSM has facilities throughout the United States, including Schenectady, New York and Ontario, California." Id. As such, Weber avers, "it is more likely than not that QIC knew or reasonably should have known that the product it was manufacturing was headed to DSM including without limitation its Schenectady, New York facility." Id.

Despite providing this evidence, Provitas makes no effort to explain how the evidence supports an exercise of jurisdiction by this Court under New York law. Provitas cites no New York law in its briefing on this issue, and makes no effort to challenge the QIC's arguments regarding that law. Provitas does not mention the New York Civil Procedure Laws and Rules, and completely ignores section 302(a). Instead, Provitas uses this evidence as part of an argument that the Court should find that an exercise of jurisdiction over QIC would satisfy the requirements of due process. The question does not arise until the Court finds that New York law permits an exercise of jurisdiction over QIC.

12

Since the burden is on Provitas to explain why the Court can assert personal jurisdiction over QIC under New York law, the Court can only conclude that Provitas has no argument about why specific jurisdiction could apply under New York law.  Without showing that New York permits the exercise of jurisdiction over QIC, Provitas cannot meet the first part of the personal jurisdiction test.  Since the Court's role is to evaluate arguments, not make them for the parties, the Court is forced to conclude that Provitas has failed to meet its burden of demonstrating the existence of jurisdiction.  The Court will grant QIC's motion to dismiss in this respect.

### C.    Provitas's Motion to Dismiss

Provitas argues that QIC is a necessary party to this action and that the case should be dismissed if the Court finds that QIC is not subject to personal jurisdiction in this District. Both QIC and DSM argue that QIC is not a necessary party.  DSM also disputes whether that company would be subject to personal jurisdiction in Minnesota.

Provitas cites to Federal Rule of Civil Procedure 19(a) to argue that QIC is a necessary party.  That Rule provides, in relevant part:

> (1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).  "If a person who is required to be joined if feasible cannot be joined," the court must determine whether the action "should proceed among the existing

13

parties or should be dismissed." FED. R. CIV. P. 19(b).   The Rule provides a number of

factors for the court to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice
> that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were
> dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

Rule 19 establishes "a two-step test for determining whether the court must dismiss

an action for failure to join an indispensible party." Viacom Int'l v. Kearney, 212 F.3d 721,

724 (2d Cir. 2000).  "First, the court must determine whether an absent party . . . qualifies

as a 'necessary' party under Rule 19(a)." Id.  If the party is not necessary as defined by

the rule, "the court need not decide whether its absence warrants dismissal under Rule

19(b)." Id.  If the court finds the party necessary and incapable of joinder, then the court

"must . . . determine whether the party is 'indispensable.'" Id. at 725.  If the party is

indispensable, "then the court must dismiss the action pursuant to Rule 19(b)." Id.

The first question the Court must answer, then, is whether QIC is a "necessary"

party to this litigation.  See Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 139 (2d Cir. 2002)

("A party cannot be indispensable unless it is a 'necessary party' under Rule 19(a)").

Provitas first points to Rule 19(a)(1)(A), and argues that, without QIC, the court cannot

provide relief among the existing parties.  DSM's complaint alleges two claims concerning

the tainted soy milk: breach of contract and breach of express warranty.  DSM alleges that

the company "specifically contracted with Provitas for the supply of Vitamin D2 for use in

vegan products."  Complt. at ¶ 26.  Provitas allegedly breached the contract by failing to

provide the agreed-upon product but instead "provided contaminated product unsuitable for

use by DSM."  Id. at ¶ 28.  Because Provitas also failed to warn DSM about the

contaminated D2 in a timely fashion, DSM mixed the D2 into soy milk and ruined that

supply.  Id. at ¶ 29.  DSM seeks damages in the form of the amount paid to Provitas for the

Vitamin D2, as well as $1.8 million in lost sales of soy milk the breach allegedly caused.  Id.

at ¶ 30.  The breach of express warranty claim alleges that the purchase order promised

that the goods supplied were "free from all defects of material, workmanship or installation"

and that the product supplied would "be suitable and may be sued for" DSM's intended

use.  Id. at ¶ 32.  Despite these promises, DSM alleges that Provitas provided a product

that "did not meet the required specifications and was not free of defects."  Id. at ¶ 35.

DSM seeks the same damages related to the cost of the Vitamin D2 and the spoiled soy

milk as in the contract claim.  Id. at ¶ 36.

Provitas's first argument is that QIC is a necessary party because the Court cannot

provide proper relief to the parties without QIC's participation in this suit.  The only claims

at issue in the underlying case arise out of a contract between DSM and Provitas.  Provitas

claims that:

> The question of whether Provitas breached its contract and/or express warranty with
> DSM will turn on two issues: (1) whether the presence of Vitamin D3 constitutes a
> breach of contract and/or breach of express warranty where there is no express
> agreement or written guarantee that the dry Vitamin D2 would contain zero
> percentage of Vitamin D3; and (2) whether the existence of Vitamin D3 in the
> Vitamin D2 was a result of QIC's acts or omissions in its production, cleaning,
> packaging, and/or labeling of the product it produced, and/or DSM's acts or
> omissions in failing to properly inspect the 500 kg of dry Vitamin D2 powder after
> receipt from QIC and before adding it to 106,000 kg of vegan soy milk product,
> and/or the possibility of DSM being the one who inadvertently mixed Vitamin D3 into
> its own soy milk product.

The Court is unpersuaded.  QIC is not a party to the contract here at issue.  "'A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract.'"  ConnTech Dev. Co. v. Univ. of Conn. Educ. Props, 102 F.3d 677, 682 (2d Cir. 1996) (quoting Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1044 (9th Cir. 1983)).  Here, DSM complains that Provitas breached a contract and an express warranty between the parties to deliver Vitamin D2 that did not contain any animals products when Provitas provided powdered Vitamin D2 that actually contained such products.  That question can be answered without determining whether a third party breached an agreement to supply untainted vitamin powder to Provitas.  A court can determine the obligations in a contract between the parties to one contract without examining the obligations in a contract that only involves one of the parties, and thus QIC is not a necessary party.  See Jonesfilm, 299 F.3d at 141 ("If the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a).").  Similarly, answering the question of whether the Vitamin D2 powder delivered to DSM was actually tainted and what role DSM's own conduct played in the damages the company suffered are not ones that require the presence of QIC as a third-party defendant.  "Courts have consistently held that knowledge of relevant information does not render an individual a necessary party."  Third Ave. Trust v. Sun Trust Bank, 163 F.Supp.2d 215, 218 (S.D.N.Y. 2001).  The Court can resolve the contract dispute between DSM and Provitas without including QIC.[4]

_____

[4]Courts have also concluded that joint tortfeasors are not always necessary parties. As the Court found in Washington v. City of New York, No. 18 Civ. 12306 (CM), 2019 U.S. Dist. LEXIS 77130 at *34-35 (S.D.N.Y. Apr. 30, 2019):

Provitas also contends that it will be "'subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations'" if QIC is not included in this litigation.  Under Rule 19, "the substantial risk of inconsistent obligations must be **caused by** the non-party's absence in the case."  Mastercard Int'l, Inc. v .Visa Int'l Serv. Ass'n, 471 F.3d 377, 388 (2d Cir. 2006) (emphasis in original).  "'Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.'" Bingham v. Rynkewicz, No. 6:16-CV-06829EAW, 2019 U.S. Dist. LEXIS 10095, at *8 (W.D.N.Y. Jan. 22, 2019) (quoting Gibbs Wire and Steel Co., Inc. v. Johnson, 255 F.R.D. 325, 330 (D. Conn. 2009)).  "Rule 19 does not protect a party from logically inconsistent results, only inconsistent obligations."  Evergreen Marine Corp. v. Welgrow Int'l, 942 F.Supp. 201, 206 (S.D.N.Y. 1996).  "The possibility of different damage awards is not sufficiently 'inconsistent' to invoke the protection of this Rule."  Id.

Provitas makes no attempt to explain how failure to include QIC in this action would subject it to a substantial risk of double, multiple, or inconsistent obligations; Provitas simply quotes the rule.  Here, another obligation appears to be at issue related to the

---

the Court can afford Plaintiffs complete monetary relief without [a particular state agency] being a party.  Joint tortfeasors are not *de facto* necessary parties; they do not need to be included in a single lawsuit to afford complete monetary relief. See, e.g., Grimes v. CBS Corp., No. 17 CIV. 8361 (AJN), 2018 U.S. Dist. LEXIS 104472, 2018 WL 3094919, at *2-3 (S.D.N.Y. June 21, 2018).  All present and absent defendants are jointly and severally liable, so Plaintiffs can choose to sue a subset of tortfeasors and obtain full damages from only those defendants.  See, e.g., 2018 U.S. Dist. LEXIS 104472, [WL] at *2.  If the City were to be found liable, it could then seek contribution from the SCOC as a joint tortfeaosr.  Id.  The [agency] is not a necessary party simply because it might share responsibility for the violation of Plaintiffs' rights.

2019 U.S. Dist. LEXIS at *34-35.

agreement between Provitas and QIC.  That agreement created an obligation for QIC to produce Vitamin D2 powder which Provitas then supplied to DSM.  Provitas claims that QIC breached that agreement by providing powder tainted with animal protein, and that QIC's breach could potentially lead to damages against Provitas in this lawsuit.  How that would lead to multiple, double, or inconsistent obligations is unclear.  Assuming that Provitas faced damages from this lawsuit, Provitas does not point to any obligations the company would face in other courts that would be inconsistent with the obligations here.  Nor does Provitas explain how any additional obligations for the company are threatened in other litigation.  Nothing indicates that Provitas faces another lawsuit in another forum that would lead to more damages from the events that gave rise to this lawsuit.  Indeed, the additional litigation that appears likely would be a cause of action by Provitas seeking damages from QIC related to the allegedly tainted powder.  Provitas would recover in such an action, not face an obligation or liability.  The lack of Provitas, a non-party to the contract at issue in this case, will not create any inconsistent obligations; a court in another forum can address the separate obligations in the contract between Proviats and QIC.  See Mastercard, 471 F3d. at 388 ("Whether Visa is or is not a party in the underlying lawsuit, FIFA and VISA will litigate *their* dispute under *their* contract later on down the road if MasterCard prevails here.") (emphasis in original).  QIC is not a necessary party.

Since the Court has found that QIC is not a necessary party, the Court does not need to address whether QIC is indispensable.  The Court will deny Provitas's motion to dismiss for failure to join an indispensable party.

**D.    Motion to Transfer**

18

As an alternative to dismissing the case, Provitas argues that the case should be transferred to the United States District Court for the District of Minnesota.  Transferring the case to that jurisdiction, Provitas claims, will move the case to a forum where the court can obtain personal jurisdiction over QIC.  Doing so would permit the entire matter to be adjudicated in a single forum and allow that court to resolve all the matters at issue in this dispute.  DSM, the Plaintiff in this matter, opposes the motion.  Transfer is not necessary, DSM claims.  In any case, DSM argues that the Court in Minnesota cannot obtain personal jurisdiction over DSM.

Provitas seek to transfer venue.  Federal law provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. ¶ 1404(a).  "Congress enacted § 1404(a) to permit change of venue between federal courts."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981).  "District Courts have broad discretion in making determinations of convenience under Section 1404(a)[.]"  D. H. Blair & Co. v. Gottdiender, 462 F.3d 95, 106 (2d Cir. 2006).  Courts employ a number of factors on a "case-by-case-basis."  Id. Among the factors to consider are:

> "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of the relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."

Id. (quoting Albert Fadem Trust v. Duke Energy Corp., 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002)).  The proponent of transfer must produce clear and convincing evidence to convince the court to grant that motion.  New York Marine & Gen. Ins. Co. v. Lafarge N.

Am., Inc., 599 F.3d 102, 113-114 (2d Cir. 2010).

Provitas argues that QIC is a party necessary to the action because the cases against QIC and Provitas "turn on the same issues of fact," since the cases are "inextricably intertwined." DSM must prove damages in the same way in both actions. Provitas's obligation to pay damages will be influenced by the share of that obligation QIC has to pay. To allow separate actions to occur would create a danger of inconsistent verdicts and lead to duplicative and wasteful discovery. Moreover, mediation that could resolve the action could not be completed without all three parties to the dispute. Permitting litigation in one forum is the only way, Provitas claims, to promote judicial efficiency, fairness, and a just outcome. DSM disputes whether the District Court in Minnesota could assert personal jurisdiction over DSM.

Applying the factors stated above, the Court will deny Provitas's motion in this respect. As a general matter, DSM chose this forum, and the parties are companies who operation in various locations throughout the national economy. They can participate in discovery and litigation in this forum without incurring excessive costs. The witnesses in this contract matter should not be extensive, and to the extent there is any issue about the way that the powder got mixed into the soy milk, those events occurred in this jurisdiction. Moreover, as explained above, the dispute in this Court is a contract matter that can be resolved based on evidence of the agreement between Provitas and DSM and the actions that allegedly breached that agreement. The resolution of such claims does not depend on the actions of any other actors. Moreover, the Court has determined that QIC is not a necessary party to the dispute before this Court. Those same reasons stated above counsel against a motion to transfer to permit the inclusion of QIC and any claims that

20

Provitas has against QIC in this matter.  If QIC breached an agreement or committed some form of negligence in preparing the powdered Vitamin D2, Provitas can pursue damages for that breach in an appropriate forum.  QIC did not engage in any conduct in this forum. Litigation in this action may help to define the damages that Provitas seeks, but combining two actions that essentially sound in contract and involve different agreements between distinct parties is not necessary to promote fairness and judicial efficiency.  The Court will therefore deny the motion to transfer by Provitas.

## IV.    CONCLUSION

For the reasons states above, Third-Party Defendant QIC's motion to dismiss the Amended Third-Party Complaint for lack of personal jurisdiction, dkt. # 22, is hereby GRANTED.  Third-Party Defendant QIC's motion to dismiss the Third-Party Complaint, dkt. # 18, is hereby DENIED AS MOOT.  Third-Party Plaintiff Provitas LLC's cross-motion to dismiss or transfer the case to the United States District Court for the District of Minnesota, dkt. # 35, is hereby DENIED.


**IT IS SO ORDERED.**

Dated:December 16, 2020


Thomas J. McAvoy
Senior, U.S. District Judge